

**FILED**

7/28/2023

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

**RECEIVED**

JUL 26 2023

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF**

1:23-cv-04875
Judge Rebecca Pallmeyer
Magistrate Judge Gabriel A. Fuentes
Direct assignment

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| *ex rel*. [UNDER SEAL], | Case N |
| Plaintiff, | **QUI TAM COMPLAINT** |
| v. | **FILED UNDER SEAL** |
| [UNDER SEAL], | **UNDER 31 U.S.C. § 3730(b)(2)** |
| Defendants. | **JURY TRIAL DEMANDED** |

SHN\624309.2

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* AIDAN FORSYTH, <br><br> Plaintiff-Relator, <br><br> v. <br><br> KSO METALFAB INC. and DORA KUZELKA, <br><br> Defendants. | Case No. _____ <br><br> **QUI TAM COMPLAINT** <br><br> **FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)** <br><br> **JURY TRIAL DEMANDED** |

On behalf of the United States of America (the "United States" or the "Government"), Plaintiff and Relator Aidan Forsyth ("Relator") files this *qui tam* action against Defendants KSO Metalfab Inc. ("KSOM") and Dora Kuzelka ("Dora") (together, "Defendants") and alleges as follows:

### INTRODUCTION

1.      This is an action to recover treble damages, civil penalties and all other remedies on behalf of the United States of America in connection with the Defendants' materially false and fraudulent applications to the Government for loans under the Paycheck Protection Program ("PPP"), in violation of the False Claims Act, 31 U.S.C. §§ 3729 *et seq.* (the "FCA").

2.      Pursuant to the FCA, Relator seeks to recover, on behalf of the United States of America, damages and civil penalties arising from false or fraudulent claims for payment that Defendants submitted or caused to be submitted to the Federal Government-funded and/or subsidized PPP loan program.

SHN\624309.2

## SUMMARY OF ALLEGATIONS

3.　　Defendant Dora Kuzelka at all relevant times was an owner and principal of Defendant KSOM.

4.　　Upon information and belief, Dora at all relevant times had a 20% or greater equity interest in KSOM.

5.　　KSOM, a family-owned business based in Streamwood, Illinois, manufactures metal goods.

6.　　In or about October 2019, Dora (along with Keith, Kenneth and Kari Kuzelka, family members who also had KSOM ownership interests and management responsibilities[1]) were charged by criminal complaint with one felony count of harboring illegal aliens and one felony count of engaging in a pattern or practice of hiring illegal aliens who are ineligible to work in the United States. In or about December 2019, the Kuzelkas and one additional codefendant were indicted on twelve felony counts, including conspiracy to harbor illegal aliens, engaging in a pattern and practice of hiring illegal aliens, and ten felony counts corresponding to specific illegal alien employees.

7.　　The criminal case against the Kuzelkas did not fully resolve until 2022. Keith Kuzelka pled guilty in or about May 2021 and was sentenced in or about August 2021; Dora Kuzelka entered into a deferred prosecution agreement in or about May 2022; Kenneth and Kari Kuzelka pled guilty in or about May 2022 and were sentenced in or about December 2022.

8.　　In or about March 2021, KSOM submitted a Small Business Administration ("SBA") applications for a PPP loan. In or about April 2021, KSOM applied for a second PPP loan. These loans were issued.

---

[1] Keith worked for KSO from in or about 2009 until in or about September 2018, when Dora fired him for alleged misconduct; however, he maintained a less than 20% ownership interest in the company.

1

9.      In or about 2022, KSOM sought and obtained forgiveness of the PPP loans.

10.      Upon information and belief, Dora prepared or caused to be prepared the loan applications as KSOM's authorized representative.

11.      In the applications, Defendants falsely stated and certified that no owner of KSOM with an equity interest of more than 20 percent was currently subject to criminal charges. They also expressly acknowledged that this was a material question, and that submitting a materially false application would violate federal law.

12.      In reliance on these false statements and certifications, one or more lenders extended PPP loans to KSOM totaling nearly $850,000.00.

13.      In further reliance on Defendants' false statements and certifications, the lender forgave the PPP loans, the reimbursement for which cost the United States nearly $850,000.00.

14.      Relator files this *qui tam* lawsuit to enable the Government to recover from Defendants the SBA-guaranteed and forgiven monies that were provided to Defendants as the result of their wrongdoing, bank fees and costs paid by the Government, as well as to recover treble damages and/or penalties.

## JURISDICTION, VENUE, AND SPECIAL REQUIREMENTS

15.      This Court possesses subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it arises under the laws of the United States, under 31 U.S.C. § 3729 of the False Claims Act, and under 28 U.S.C. § 1345, which provides the United States District Courts with original jurisdiction over all civil actions commenced by the United States of America.

16.      In addition, the FCA specifically confers jurisdiction upon the United States District Courts under 31 U.S.C. § 3732.  This Court has personal jurisdiction over the

2

Defendants pursuant to 31 U.S.C. § 3732(a) because the Defendants transact business in this District, and because the PPP Loan application was prepared in, executed in, and/or submitted to the SBA from this District.

17.     Venue is proper in this District under 31 U.S.C. § 3732(a) because certain of the acts complained of herein occurred in this District.

18.     In accordance with 31 U.S.C. § 3730(b)(2), this Complaint has filed been filed *in camera* and will remain under seal for a period of at least 60 days and shall not be served on the Defendants until the Court so orders.

19.     Pursuant to 31 U.S.C. § 3730(b)(2), the Relator must provide the Government with a copy of the Complaint and a written disclosure of substantially all material evidence and material information in his possession contemporaneous with the filing of the Complaint. Relator has complied with this provision by serving copies of the Complaint and such disclosure upon Morris Pasqual, Acting United States Attorney for the Northern District of Texas, and upon the Honorable Merrick B. Garland, Attorney General of the United States.

20.     Relator is not aware that the allegations in this Complaint have been publicly disclosed.  Further, to the extent Relator is aware of any public disclosures, this Complaint is not based on such public disclosures.  In any event, this Court has jurisdiction under 31 U.S.C. § 3730(e)(4) because the Relator is an "original source" since he has voluntarily provided his information to Government before filing this Complaint, and has knowledge which is both direct and independent of, and materially adds to, any public disclosures to the extent they may exist.

## **PARTIES**

21.     Plaintiff-Relator Aidan Forsyth resides at 55 West 8th Street, New York, NY 10011.

3

22.    Defendant KSO Metalfab Inc. is a privately-held company incorporated in the State of Illinois on or about March 19, 1973. Its principal place of business is located at 250 Roma Jean Parkway, Streamwood, Illinois 60107. KSOM manufactures metal goods.

23.    Defendant Dora Kuzelka is the President and owner of KSOM, and resides at 1009 Pinehurst Court, Elgin, Illinois 60124.

## GOVERNING LAWS, REGULATIONS, AND CODES OF CONDUCT

### The False Claims Act

24.    Originally enacted in 1863, the FCA was substantially amended in 1986 by the False Claims Amendments Act. The 1986 amendments enhanced the Government's ability to recover losses sustained as a result of fraud against the United States. Further clarifying amendments were adopted in May 2009 and March 2010.

25.    The FCA imposes liability upon any person who "knowingly presents, or causes to be presented [to the Government] a false or fraudulent claim for payment or approval;" or "knowingly makes, uses or causes to be made or used, a false record or statement material to a false or fraudulent claim;" or "knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government." 31 U.S.C. § 3729(a)(1)(A), (B), (G). Any person found to have violated these provisions or conspired to have violated these provisions is liable for a civil penalty of at least $12,357.00 and up to $25,076.00 for each such false or fraudulent claim, plus three times the amount of the damages sustained by the Government. 31 U.S.C. § 3729(a), 20 CFR Part 356 and 28 CFR Part 85 (*see* 87 FR 27513, May 9, 2022).

4

26.     The FCA defines the terms "knowing" and "knowingly" to mean that a person (1) "has actual knowledge of the information;" (2) "acts in deliberate ignorance of the truth or falsity of the information"; or acts "in reckless disregard of the truth or falsity of the information." 31 U.S.C. § 3729(b)(1)(A). The statute provides that "no proof of specific intent to defraud" is required. 31 U.S.C. § 3729(b)(1)(B).

27.     The FCA also broadly defines a "claim" as one that includes "any request or demand, whether under a contract or otherwise, for money or property and whether or not the United States has title to the money or property, that – (i) is presented to an officer, employee, or agent of the United States; or (ii) is made to a contractor, grantee, or other recipient, if the money or property is to be spent or used on the Government's behalf or to advance a Government program or interest, and if the United States Government – (i) provides or has provided any portion of the money or property requested or demanded; or (ii) will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded." 31 U.S.C. § 3729(b)(2)(A).

28.     The FCA empowers private persons having information regarding a false or fraudulent claim against the Government to bring an action on behalf of the Government and to share in any recovery. The complaint must be filed under seal without service on any Defendant. The complaint remains under seal while the Government conducts an investigation of the allegations in the complaint and determines whether to intervene in the action. 31 U.S.C. § 3730(b).

29.     In this action, and under well-established precedent, the false and fraudulent nature of Defendants' conduct is informed or measured by their violation of, or failure to comply

SHN\624309.2

with, certain statutes and regulations material to the submission of applications for government-subsidized and/or issued small business loans.

**The CARES Act Authorizes Paycheck Protection Program Loans and Economic Injury Disaster Loans and Grants**

30.     The Coronavirus Aid, Relief, and Economic Security ("CARES") Act (Pub. L. 116-136) (the "CARES Act" or the "Act") was enacted in March 2020 to provide emergency financial assistance to individuals and businesses affected by the COVID-19 pandemic. The Act provided the federal Small Business Administration ("SBA") with funding and authority to modify existing loan programs and establish a new loan program to assist small businesses adversely affected by the pandemic.

31.     Section 1102 of the CARES Act authorized the SBA to guarantee up to $349 billion in forgivable 7(a) loans to small businesses for job retention and other expenses.  This program was called the Paycheck Protection Program ("PPP").   In April 2020, Congress authorized over $300 billion to additionally fund the PPP.  In June 2020, the Paycheck Protection Program Flexibility Act of 2020 (Pub. L. 116-142) was enacted which changed certain provisions of the PPP, including provisions relating to the maturity of loans, the deferral of loan payments, and loan forgiveness.

32.     Under the PPP, eligible businesses could obtain *one* SBA-guaranteed PPP loan. Businesses were required to spend loan proceeds for employee compensation, rent or mortgage, and other specified expenses and, depending on their use of the loan proceeds, could qualify for loan forgiveness, up to the full amount of the loan.

33.     The SBA delegated authority to third-party lenders to underwrite and approve the PPP loans.  To obtain a PPP loan, a qualifying business (through its authorized representative) signed and submitted a PPP loan application (SBA Form 2483) online through the lender's

6

application platform. The PPP loan application (SBA Form 2483) required the business (through its authorized representative) to acknowledge the PPP program rules and make certain affirmative certifications to be eligible to obtain the PPP loan.

34.     The borrower's authorized representative must certify, among other things, the business's average monthly payroll expenses and number of employees. This information is used to calculate the amount of money the business is eligible to be loaned. The applicant must also submit documentation showing payroll expenses, among other things.

35.     In the PPP loan application, Question 5 required the authorized representative to certify (in relevant part) that no owner of the applicant was "presently subject to a[] [felony] indictment, criminal information, arraignment, or other means by which formal criminal charges are brought in any jurisdiction[.]"

36.     The application stated that if Question 5 was answered "Yes," the loan would not be approved.

37.     The application further required the applicant's representative to "certify in good faith . . . that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" and acknowledge that "knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law" as a federal felony.

38.     PPP loan applications were processed by participating financial institutions, which served as the lenders. Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, were transmitted by the lender to the SBA in the course of processing the loan. SBA paid processing fees to lenders.

39.     Once a borrower submitted its PPP loan application to a Lender, the participating lender processed the PPP loan application.  If a PPP loan application was approved by the participating lender, the lender submitted the application to SBA for an SBA loan number and after receiving that number it thereafter funded the PPP loan using its own monies, which were 100% guaranteed by the SBA.

40.     A borrower was required to use PPP loan proceeds only for certain permissible expenses: payroll costs, interest on mortgages, rent and utilities.  The PPP allows the interest and principal on the PPP loan to be entirely forgiven if the business spends the loan proceeds on these expenses within a designated period (between eight and 24 weeks from receiving the proceeds) and uses at least 60% of the proceeds for payroll expenses.

41.     Borrowers were eligible to apply for and obtain a "second-draw" PPP loan, but only after they (properly) expended the proceeds of the first one.  "The covered periods for a First Draw PPP Loan and a Second Draw PPP Loan cannot overlap; the borrower must use all proceeds of the First Draw PPP Loan for eligible expenses before disbursement of the Second Draw PPP Loan."  86 Fed. Reg. 8283, 8288 (Feb. 5, 2021).

42.     Accordingly, the second-draw application required the borrower's authorized representative to certify that "[t]he Applicant received a First Draw Paycheck Protection Program Loan and, before the Second Draw Paycheck Protection Program Loan is disbursed, will have used the full loan amount (including any increase) of the First Draw Paycheck Protection Program Loan only for eligible expenses."

8

## SPECIFIC FRAUD ALLEGATIONS

### From October 2019 until May 2022, Dora Kuzelka was Facing Felony Charges

43.    On or about October 11, 2019, Dora Kuzelka, along with Kenneth, Kari and Keith Kuzelka, were charged in a two-count felony complaint in this District. *See United States v. Kuzelka*, Case No. 1:19-cr-780 (N.D. Ill.) (Doc. 1).

44.    The complaint charged one felony count of harboring illegal aliens and one felony count of engaging in a pattern and practice of hiring illegal aliens who were not authorized to be employed in the United States. The Kuzelkas were arrested and had initial appearances on or about October 19, 2019. *Id.* (Docs. 17-30).

45.    On or about December 18, 2019, a federal grand jury handed up an indictment charging the Kuzelkas and one additional codefendant with twelve felony counts, including conspiracy to harbor illegal aliens, engaging in a pattern and practice of hiring illegal aliens, and ten felony counts corresponding to specific illegal alien employees. *Id.* (Doc. 58).

46.    The criminal case against the Kuzelkas continued for nearly three years, including intensive pretrial litigation over discovery and a motion to suppress evidence. *See, e.g., id.* (Docs. 154, 169-171). After the Court denied most of defendants' pretrial motions, defendants pled guilty or otherwise resolved their cases. On or about May 5, 2022, Dora entered into a deferred prosecution agreement. *Id.* (Docs. 181 & 182).

### KSOM Applies for and Receives its First PPP Loan, which is Later Forgiven

47.    In or about March 2021, Dora prepared or caused to be prepared an SBA application for a PPP loan on behalf of KSOM to Itasca Bank & Trust Co. ("IBT"), a federally-insured financial institution based in Itasca, Illinois.

9

48.     On the SBA Form 2483 which was effective in March 2021, Question 5 required the authorized representative to certify (in relevant part) that no owner of the applicant was "presently subject to a[] [felony] indictment, criminal information, arraignment, or other means by which formal criminal charges are brought in any jurisdiction[.]"  The application stated that if this question were answered "Yes," the loan would not be approved.

49.     The application required the applicant's representative to "certify in good faith . . . that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" and acknowledge that "knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law" as a federal felony.

50.     Upon information and belief, Dora executed or caused to be executed KSOM's PPP loan application as the company's authorized representative.

51.     Upon information and belief, Dora falsely answered or caused to be answered "No" to Question 5 in the loan application, and initialed or caused to be initialed Question 5 to confirm this false response.

52.     Answering "No" to Question 5 was false because Dora, a 20% or greater owner of KSOM, was under federal indictment for multiple felonies when the application was submitted.

53.     Upon information and belief, Dora falsely certified or caused to be certified that "the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" while acknowledging that "knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law" as a federal felony.

10

54.     In or about March 2021, Dora submitted or caused to be submitted KSOM's PPP loan application to IBT.

55.     On or about March 18, 2021, in reliance on Defendants' materially false and fraudulent representations and certifications in the loan application, IBT issued PPP Loan #4166398610 to KSOM in the amount of $422,121.30 (the "610 Loan").

56.     On or about June 29, 2022, the 610 Loan was forgiven in full, causing the United States to reimburse IBT for the full amount plus interest, costs and fees.

### KSOM Applies for and Receives a Second PPP Loan, which is Later Forgiven

57.     In or about April 2021, Dora prepared or caused to be prepared an SBA application for a second-draw PPP loan on behalf of KSOM to IBT.

58.     Again, Question 5 required the authorized representative to certify (in relevant part) that no owner of the applicant was "presently subject to a[] [felony] indictment, criminal information, arraignment, or other means by which formal criminal charges are brought in any jurisdiction[.]" The application stated that if this question were answered "Yes," the loan would not be approved.

59.     Further, the application required the representative to certify: "The Applicant received a First Draw Paycheck Protection Program Loan and, before the Second Draw Paycheck Protection Program Loan is disbursed, will have used the full loan amount (including any increase) of the First Draw Paycheck Protection Program Loan only for eligible expenses."

60.     The application required the applicant's representative to "certify in good faith . . . that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" and acknowledge that

11

"knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law" as a federal felony.

61.     Upon information and belief, Dora executed or caused to be executed KSOM's PPP loan application as the company's authorized representative.

62.     Upon information and belief, Dora falsely answered or caused to be answered "No" to Question 5 in the loan application, and initialed or caused to be initialed Question 6 to confirm this false response.

63.     Answering "No" to Question 5 was false because Dora, a 20% or greater owner of KSOM, was under federal indictment for multiple felonies when the application was submitted. Further, KSOM was ineligible for a second-draw loan because its first loan had been fraudulently obtained.

64.     Upon information and belief, Dora falsely certified or caused to be certified that KSOM's first-draw loan proceeds had already been properly and fully spent. This was false because KSOM had received its first-draw PPP loan only a few days previously on March 18.

65.     Upon information and belief, Dora falsely certified or caused to be certified that "the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" while acknowledging that "knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law" as a federal felony.

66.     In or about April 2021, Defendants submitted or caused to be submitted KSOM's PPP loan application to IBT.

12

67.     On or about April 8, 2021, in reliance on Defendants' materially false and fraudulent representations and certifications in the loan application, IBT  issued PPP Loan #8829128708 to KSOM in the amount of $421,820.33 (the "708 Loan").

68.     On or about June 29, 2022, the 708 Loan was forgiven in full, causing the United States to reimburse IBT for the full amount plus interest, costs and fees.

### THE GOVERNMENT HAS BEEN DAMAGED AS A RESULT OF DEFENDANTS' CONDUCT

69.     Defendants' materially false statements have caused the federal government to be defrauded of taxpayer funds in the approximate amount of $850,000.00.

### CLAIMS FOR RELIEF
### COUNT I
**False Claims Act:**
**Presenting or Causing to be Presented False and Fraudulent Claims**
**31 U.S.C. § 3729(a)(1)(A)**

70.     Relator repeats the allegations contained in the above paragraphs as if fully set forth herein.

71.     As more particularly set forth in the foregoing paragraphs, by virtue of the acts alleged herein, the Defendants have knowingly presented, and caused to be presented, false or fraudulent claims for payment or approval in violation of 31 U.S.C. § 3729(a)(1)(A).

72.     As a result thereof, the United States has been damaged in an amount equal to or greater than the amount paid by the United States for such false or fraudulent claims.

### COUNT II
**False Claims Act:**
**Making or Using False**
**Records or Statement to Cause Claims to be Paid**
**31 U.S.C. § 3729(a)(1)(B)**

73.     Relator repeats the allegations contained in the above paragraphs as if fully set forth herein.

13

74.     As more particularly set forth in the foregoing paragraphs, by virtue of the acts alleged herein, the Defendants have knowingly made, used, or caused to be made or used, false records or statements – *i.e.*, the false representations made or caused to be made by Defendants – material to false or fraudulent claims in violation of 31 U.S.C. § 3729(a)(1)(B).

75.     As a result thereof, the United States has been damaged in an amount equal to or greater than the amount paid by the United States for such false or fraudulent claims.

**COUNT III**
**False Claims Act: Conspiracy**
**31 U.S.C. § 3729(a)(1)(C)**

76.     Relator repeats the allegations contained in the above paragraphs as if fully set forth herein.

77.     As more particularly set forth in the foregoing paragraphs, by virtue of the acts alleged herein, the Defendants conspired with and among each other, and with others, to make or present false or fraudulent claims, and performed one or more overt acts to effect the submission and cause the payment of false or fraudulent claims.

78.     As a result thereof, the United States has been damaged in an amount equal to or greater than the amount paid by the United States for such false or fraudulent claims.

**PRAYER FOR RELIEF**

**WHEREFORE**, Relator, on behalf of the United States Government, demands judgment against the Defendants, ordering that:

A.     That Defendants be ordered to cease and desist from submitting any more false claims, or further violating 31 U.S.C. § 3729, *et seq.*;

B.     That judgment be entered in Relator's favor and against Defendants in the amount of each and every false or fraudulent claim, multiplied as provided for in 31 U.S.C. § 3729(a),

14

plus a civil penalty of not less than $13,508 or more than $27,018 per claim as provided by 31

U.S.C. § 3729(a), 20 CFR Part 356 and 28 CFR Part 85 (*see* 88 FR 5776, Jan. 30, 2023), to the

extent such multiplied penalties shall fairly compensate the United States of America for losses

resulting from the various schemes undertaken by Defendants, together with penalties for

specific claims to be identified at trial after full discovery;

      C.     That Defendants be ordered to disgorge all sums by which they have been

enriched unjustly by their wrongful conduct;

      D.     That judgment be granted for Relator against Defendants for all costs, including,

but not limited to, court costs, expert fees and all attorneys' fees incurred by Relator in the

prosecution of this suit; and

      E.     That Relator be granted such other and further relief as the Court deems just and

proper.

### JURY DEMAND

     Relator hereby demands a trial by jury as to all issues so triable.

DATE: July __24__, 2023              Respectfully submitted,

                               **GOLDBERG KOHN**

                     By:  */s/ David J. Chizewer*
                         David J. Chizewer
                         Roger A. Lewis
                         55 East Monroe Street
                         Suite 3300
                         Chicago, Illinois 60603-5792
                         Tel: (312) 201-3938
                         Fax: (312) 863-7438
                         David.chizewer@goldbergkohn.com
                         Roger.lewis@goldbergkohn.com

                         Eric H. Jaso (*pro hac vice* admission pending)
                         **SPIRO HARRISON & NELSON**

15

363 Bloomfield Avenue
Suite 2C
Montclair, NJ 07042
Telephone: (973) 232-0881
Facsimile: (973) 232-0887
ejaso@shnlegal.com

*Attorneys for Relator*

16