UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, *ex rel.,* AIDAN FORSYTH, | ) ) ) | |
| Plaintiff, | ) ) ) | No. 23 C 4875 |
| v. | ) ) | Judge Shah |
| KSO METALFAB, INC., *et al.,* | ) ) | |
| Defendants. | ) | |

## UNITED STATES' RESPONSE TO DEFENDANTS' MOTION TO DISMISS

### Introduction

Defendants KSO MetalFab, Inc. and its majority owner, Dora Kuzelka, move to dismiss this False Claims Act Paycheck Protection Program case on grounds that the complaint does not properly allege causation or unjust enrichment, and that the alleged damages and penalties violate the excessive fines clause. Their motion should be denied because, as the complaint alleges, Kuzelka falsely certified on the loan applications that she was not subject to criminal charges at the relevant time, when in fact she was under a criminal complaint for rehiring illegal aliens, and the application even warns that the defendants would not have received the loans if Kuzelka had not falsified the application. That is enough to allege causation and unjust enrichment. Also, treble damages and penalties do not violate the excessive fines clause.

### Facts

**1.      The PPP Program**

On March 27, 2020, the Coronavirus Aid, Relief, and Economic Security Act (CARES Act), Pub. L. 116-136, was enacted to provide emergency assistance for individuals, families, and businesses affected by the COVID-19 pandemic. Complaint ("Cpl."), ¶ 10, Dkt. 26. Section 1102

of the CARES Act temporarily permitted the SBA to guarantee 100 percent of loans made by participating lenders under a new program known as the Paycheck Protection Program. The Act stated that PPP lenders were deemed to have been delegated authority by the SBA to make and approve PPP loans and section 1106 of the Act provided for forgiveness of loans guaranteed under the PPP. *Id.* To obtain a PPP loan, a business, through its authorized representative, signed and submitted a PPP loan application to a lender with delegated authority from the SBA, using a specific or equivalent SBA loan application form. *Id.*, ¶ 11. The form required the applicant to acknowledge the PPP program rules and make certain affirmative certifications regarding program eligibility, including as shown here (*id.*):

**By Signing Below, You Make the Following Representations, Authorizations, and Certifications**

CERTIFICATIONS AND AUTHORIZATIONS

I certify that:
- I have read the statements included in this form, including the Statements Required by Law and Executive Orders, and I understand them.
- The Applicant is eligible to receive a loan under the rules in effect at the time this application is submitted that have been issued by the Small Business Administration (SBA) implementing the Paycheck Protection Program under Division A, Title I of the Coronavirus Aid, Relief, and Economic Security Act (CARES Act) (the Paycheck Protection Program Rule).

Under the PPP, lenders could rely on borrowers' certifications regarding program eligibility and use of loan proceeds and rely on documents provided by the borrower to determine loan amount and eligibility for loan forgiveness. *Id.*, ¶ 12. If the lender approved the borrower's application, the lender submitted information from the borrower's loan application form electronically to the SBA. *Id.*, ¶ 13. Based on the lender's electronic submission, the loan was assigned a loan number, and the SBA provided a loan guarantee to the lender. *Id.*

A PPP borrower could later apply for loan forgiveness, which required the borrower to certify that the loan had been used for authorized purposes and that other PPP requirements were met. *Id.*, ¶ 14. As with the initial loan applications, loan forgiveness applications would be submitted through the lender to the SBA. *Id.* Most loan forgiveness applications were subject only to automated screening by the SBA's computer system, which would approve the application

2

unless there were non-compliance issues identified by the screener. If there were no compliance issues, forgiveness would be approved and the SBA would remit payment to the lender for the principal amount of the loan, plus interest. *Id.*

### 2. PPP Eligibility Requirements

Like SBA's "section 7(a)" loan program, which has long limited eligibility for persons with (or companies with owners with) pending criminal charges or other criminal histories, PPP loans were subject to rules and eligibility restrictions, including restrictions relating to criminal charges and criminal history. *Id.*, ¶ 15. As relevant here, a company was ineligible for a PPP loan if any individual owning 20% or more of the company's equity was subject to an indictment, criminal information, arraignment, or other means by which formal criminal charges are brought or was presently incarcerated or on probation. *Id.*, ¶ 16. These requirements were the subject of a "Yes or No" question on the SBA application form, with a warning that if the answer was "Yes," the loan would not be approved, as shown here (*id.*):

*If questions (1), (2), (5), or (6) are answered "Yes," the loan will not be approved.*

| Question | Yes | No |
|---|---|---|
| 5. Is the Applicant (if an individual) or any individual owning 20% or more of the equity of the Applicant subject to an indictment, criminal information, arraignment, or other means by which formal criminal charges are brought in any jurisdiction, or presently incarcerated, or on probation or parole? <br> Initial here to confirm your response to question 5 → _____ | ☐ | ☐ |

An interim final rule also defined ineligibility if any "owner of 20 percent or more of the equity of the applicant is incarcerated, on probation, on parole; presently subject to an indictment, criminal information, arraignment, or other means by which formal criminal charges are brought in any jurisdiction; or has been convicted of a felony within the last five years." *Id.*, ¶ 17; *see* 13 C.F.R. § 120.10; SOP 50 10 5(K), Subpart B, Chapter 2, § 3.A.13.

A final eligibility provision that is relevant here relates to PPP "second draw" loans, which were essentially a second round of loans authorized by Congress as part of the Economic Aid Act

of 2021. *Id.*, ¶ 18. An SBA interim final rule stated that "an entity that is ineligible to receive a First Draw PPP Loan under CARES Act or Consolidated First Draw PPP [rule] is also ineligible for a Second Draw PPP Loan," with subsection (e)(1) of the interim final rule "ensur[ing] that a borrower that received a First Draw PPP Loan despite being ineligible to receive the loan is not eligible to receive a Second Draw PPP Loan." *Id.*

### 3. The Defendants' Fraudulent Conduct

Defendant Kuzelka was a 51 percent owner and president of KSO at the relevant time. Cpl., ¶ 9; Mem. at 2. In April 2017, the U.S. Department of Homeland Security Investigations ("HSI") issued a notice of inspection to Kuzelka's son, Kenneth Kuzelka, another of KSO's managing owners. *Id.*, ¶ 26. At the time of the notice, KSO's workforce was comprised of approximately 67 employees. *Id.* Based on HSI's investigation, about 36 of the 67 employees were aliens as defined by Section 1324a, meaning that they were without legal status or authorization to work in the United States, and HSI provided to Kenneth Kuzelka, Dora Kuzelka, and KSO's human resources manager, a list identifying the 36 employees. *Id.* The 36 employees were personally known by the Kuzelka family. *Id.*

In May 2017, the Kuzelka family devised a scheme to rehire the 36 unauthorized aliens as temporary workers through a staffing company, knowing that the aliens had come to the United States in violation of law. *Id.*, ¶ 27. Despite the rehiring scheme, Kuzelka signed a letter in September 2017 to HSI listing the illegal alien employees and the date KSO supposedly terminated their employment. *Id.*, ¶ 28. She also met with HSI officials in March 2018 and falsely informed them that all 36 employees had been terminated by KSO even though some of the illegal workers had already been rehired by KSO through the staffing company and plans were in place to rehire more undocumented employees. *Id.*

4

Kuzelka participated personally in the rehiring scheme by, *inter alia*, overseeing overtime payments (*Id.*, ¶ 29), and providing a KSO corporate credit card to one of the illegal alien employees, in lieu of returning her to the KSO official payroll. *Id.* Kuzelka continued to own, manage, and work at KSO and facilitate KSO's continued employment of several undocumented employees that she knew were in the United States illegally and remained and were employed in the United States in violation of the law. *Id.*, ¶ 30.

In October 2019, the Kuzelkas were charged by criminal complaint with several counts of criminal violations involving hiring illegal alien employees. *Id.*, ¶ 31. In May 2022, Kenneth Kuzelka, Kari Kuzelka, and Keith Kuzelka pleaded guilty to several of the charges, and Dora Kuzelka signed a non-prosecution agreement to allow her to show good conduct during an 18-month period. *Id.*, ¶¶ 31–33.

### 4. The Loans

On March 16, 2021, while the above referenced criminal charges were pending against Kuzelka, she, on behalf of KSO, signed and submitted a PPP loan application to Itasca Bank and Trust Company ("Itasca Bank") (a delegated PPP lender) seeking a loan in the principal amount of $416,727 (the First Draw Loan). *Id.*, ¶ 35. Question number 5 on the application for the First Draw Loan asked, "Is the Applicant (if an individual) or any individual owning 20% or more of the equity of the Applicant subject to an indictment, criminal information, arraignment, or other means by which formal criminal charges are brought in any jurisdiction, or presently incarcerated, or on probation or parole?" *Id.*, ¶ 36. The application also expressly stated, "If questions (5) or (6) are answered 'Yes,' the loan will not approved." Despite the pending criminal charges against her, the "No" box was checked for question number 5, which was initialed by Kuzelka, as shown here (*id.*, ¶ 37):

*If questions (1), (2), (5), or (6) are answered "Yes," the loan will not be approved.*

| Question | Yes | No |
|---|---|---|
| 5. Is the Applicant (if an individual) or any individual owning 20% or more of the equity of the Applicant presently incarcerated or, for any felony, presently subject to an indictment, criminal information, arraignment, or other means by which formal criminal charges are brought in any jurisdiction?<br>Initial here to confirm your response to question 5 → | | ✓ |

The application that Kuzelka signed also required a certification that "[t]he Applicant is eligible to receive a loan under the rules in effect at the time this application is submitted . . . ." *Id.*, ¶ 38. KSO was in fact *not* eligible under the PPP rules, due to the pending criminal charges against Kuzelka. Kuzelka signed the certification anyway. *Id.* The application for the First Draw Loan also required the applicant to list "all owners of 20% or more of the equity of the Applicant" and to provide the percentage ownership of each. *Id.* KSO's application disclosed Kuzelka's ownership interests as 51%. *Id.*, ¶ 39. Based on KSO's First Draw Loan application including the eligibility certifications, Itasca Bank submitted information about the application to the SBA, causing the assignment of an SBA loan number and a PPP loan guarantee, and disbursed the loan in the amount of $416,727 to KSO. *Id.*, ¶ 40.

KSO later applied for forgiveness of its First Draw Loan. *Id.*, ¶ 41. On this application, Kuzelka, as KSO's owner, certified that "[t]he information provided in this application and the information provided in all supporting documents and forms is true and correct in all material respects." *Id.* On June 29, 2022, SBA approved forgiveness of KSO's First Draw Loan and remitted a payment of $422,121 (loan principal amount of $416,727 plus accrued interest and processing fees) to Itasca Bank. *Id.*, ¶¶ 40, 42.

On April 6, 2021, KSO submitted a second PPP loan application to Itasca Bank seeking a loan in the principal amount of $416,727 (the Second Draw Loan). *Id.*, ¶ 43. The application for the Second Draw Loan was also signed by Kuzelka, and required a certification that "[t]he Applicant is eligible to receive a loan under the rules in effect at the time this application is

6

submitted . . . ." *Id*., ¶ 44. KSO was in fact not eligible under the relevant PPP rules at the time, because it had been ineligible for a First Draw Loan as discussed above. Nevertheless, Kuzelka signed the certification. *Id*. Also, despite the pending criminal charges against Kuzelka discussed above, the "No" box was checked for question number 4, which was initialed by Kuzelka, as shown here (*id*., ¶ 45):

| *If questions (1), (2), (4), or (5) are answered "Yes," the loan will not be approved.* | | |
|---|---|---|
| Question | Yes | No |
| 4. Is the Applicant (if an individual) or any individual owning 20% or more of the equity of the Applicant presently incarcerated or, for any felony, presently subject to an indictment, criminal information, arraignment, or other means by which formal criminal charges are brought in any jurisdiction? Initial here to confirm your response to question 4 → | | ✓ |

The application for the Second Draw Loan also required the applicant to list "all owners of 20% or more of the equity of the Applicant" and to provide the percentage ownership of each. *Id*., ¶ 46. KSO's application disclosed Kuzelka's ownership interest as 51%. *Id*. Based on KSO's Second Draw Loan application and the eligibility certifications, Itasca Bank disbursed the loan in the amount of $416,727 to KSO and was paid a $12,501 processing fee by SBA. *Id*. KSO later applied for forgiveness of the Second Draw Loan on June 22, 2022, and Kuzelka, as KSO's Owner, certified that "[t]he information provided in this application and the information provided in all supporting documents and forms is true and correct in all material respects." *Id*. On June 29, 2022, SBA approved forgiveness of KSO's Second Draw Loan and remitted a payment of $421,820 (loan principal amount of $416,727 plus accrued interest) to Itasca Bank. *Id*., ¶ 49.

## Argument

Defendants' argument that the complaint does not allege that the false loan certifications caused a government loss should be rejected since, as the complaint makes clear, the loan application itself clearly stated that if the applicant answered "Yes" to the relevant question, the loan would not be approved such that the falsified application clearly caused the loan to be

7

disbursed. Their argument that treble damages and penalties violate the excessive fines clause is equally meritless since treble damages and a penalty for each application is mandatory under the FCA and it is not grossly disproportional to the gravity of the defendants' offense. Their undeveloped argument that they were not unjustly enriched by receiving loans to which they were not entitled should also be rejected, as set forth below.

## I.      The Fraudulent Certifications Caused a Loss to the SBA.

While the United States need not, at this stage, *prove* causation, the loan application itself proves (and certainly adequately *alleges*) that the false certifications caused a loss to the SBA. On a motion to dismiss, the court evaluates the sufficiency of the complaint, viewing it in the light most favorable to the plaintiff, taking as true all well-pleaded factual allegations and making all possible inferences from the allegations in the plaintiff's favor. *Wilson v. Price*, 624 F.3d 389, 391 (7th Cir. 2010). The review of the sufficiency of a complaint is "necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). "Although the bar to survive a motion to dismiss is not high, the complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id*. citing *Bonte v. U.S. Bank, N.A*., 624 F.3d 461, 463 (7th Cir. 2010); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint in this case easily surpasses this bar.

The False Claims Act "is an anti-fraud statute and claims under it are subject to the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure." *United States ex rel. Gross v. AIDS Rsch. All.-Chicago*, 415 F.3d 601, 604 (7th Cir. 2005). Under Rule

8

9(b), a plaintiff who is "alleging fraud or mistake . . . must state with particularity the circumstances constituting fraud or mistake" (Fed. R. Civ. P. 9(b)), by describing the 'who, what, when, where, and how' of the fraud – 'the first paragraph of any newspaper story.'" *United States ex rel. Berkowitz v. Automation Aids, Inc.*, 896 F.3d 834, 839 (7th Cir. 2018) (quoting *United States ex rel. Lusby v. Rolls-Royce Corp.*, 570 F.3d 849, 853 (7th Cir. 2009)). However, "courts and litigants should not take an overly rigid view of the formulation." *United States ex rel. Prose v. Molina Healthcare of Illinois, Inc.*, 17 F.4th 732, 739 (7th Cir. 2021) (cleaned up). The particularity requirement is designed to "discourage a 'sue first, ask questions later' philosophy." *Heard v. Trax Recs., Inc.*, 2021 WL 3077668, at *3 (N.D. Ill. 2021) (quoting *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 441 (7th Cir. 2011)). The goal is to minimize "strike suits" and "fishing expeditions," and provide notice of the claim to the adverse party. *Jepson, Inc. v. Makita Corp.*, 34 F.3d 1321, 1327 (7th Cir. 1994) (citation omitted).

Here, the complaint clearly meets the "who, what, when, where, and how' of the fraud" standard, as described above and in the complaint. *Automation Aids, Inc.*, 896 F.3d 834, 839 (7th Cir. 2018). Defendants' argument (Mem. at 7) that the complaint "does not allege that [Kuzelka's] certifications caused any loss" contradicts the complaint that specifically alleges that, as the loan application states, "[i]f questions (1), (2), (5) or (6) [or (1), (2), (4), or (5) for the second draw loan] are answered "Yes," the loan will not be approved." Cpl., ¶¶ 37, 45. There is no dispute that Kuzelka was subject to a criminal complaint for hiring illegal aliens when she completed and signed the loan applications, as described above and in the complaint. *Id.* She should have checked the "Yes" box, resulting in her loan application being denied, but instead, she falsely checked the "No" box causing KSO to receive the loans. *Id.* That is all that is required to allege causation. *United States v. Molina Healthcare of Illinois, Inc.*, 17 F.4th 732, 745 (7th Cir. 2021) (allegations

that an applicant submitted falsified forms to receive government funds "is enough to satisfy the pleading burden on causation.").

Even allegations "that permit an inference of causation meet the pleading requirement for causation." *United States ex rel. Sibley v. Univ. of Chicago Med. Ctr.*, 44 F.4th 646, 663 (7th Cir. 2022). Here, the court can infer (if required) that if the loans were not approved, then there would be no loss to the government but because Kuzelka falsely stated "No" to the question about whether she was currently under criminal charges, she and KSO received loan funds to which they were not entitled in violation of the FCA.

Defendants' reliance on *United States v. Luce*, 873 F.3d 999, 1011 (7th Cir. 2017), is misplaced because in *Luce*, the Seventh Circuit redefined the causation element to be *proven* at trial or summary judgment, not *alleged* in a complaint subject to a motion to dismiss. Besides, the United States *can* prove that Kuzelka's falsified answers on the loan applications were the proximate cause of the loss since, as the application even states, had she truthfully checked the "Yes" box, she would not have received the loan, and it is foreseeable that an applicant would receive a loan if she falsely checked the "No" box even though the correct answer was "Yes."

While a full analysis of *Luce* is not warranted at this stage since the United States is not required to prove causation, as set forth above, the defendants' argument that "proximate cause of foreseeable harm or loss to the Government is a necessary element of an FCA claim," confuses the terms and misstates the law. Mem. at 7. In *Luce* the court reversed its holding in *United States v. First National Bank of Cicero*, 957 F.2d 1362 (7th Cir. 1992), and found, like other circuits, that causation under the FCA requires proof of "proximate cause," which, "encompasses both cause in fact and legal cause." *Luce*, 873 F.3d at 1012. "'To establish cause in fact, the plaintiff must show the defendant's 'conduct was a material element and a substantial factor in bringing about the

injury.' Legal cause on the other hand, 'is essentially a question of foreseeability,' and we must determine 'whether the injury is of a type that a reasonable person would see as a likely result of his or her conduct.'" *Id.,* quoting *Blood v. VH-1 Music First*, 668 F.3d 543, 546 (7th Cir. 2012); *see Stavropoulos v. United States*, No. 18 C 1946, 2021 WL 3408502, at *7 (N.D. Ill. Aug. 4, 2021), aff'd, No. 21-2532, 2022 WL 899464 (7th Cir. Mar. 28, 2022) (defining elements of proximate cause in negligence case) quoting *Stanphill v. Ortberg*, 129 N.E.3d 1167, 1176 (Ill. 2018). In other words, *Luce[1]* simply added the legal cause requirement to the plaintiff's burden of proof such that a FCA plaintiff must now prove both "cause-in-fact," ("that but for the defendant's conduct, the injury would not have occurred," (*Stavropoulos*, 2021 WL 3408502, at *7 quoting *Miranda v. Cnty. of Lake*, 900 F.3d 335, 348 (7th Cir. 2018)), *and* "legal cause," which is "a policy question that 'draws an outer limit of liability for the consequences of some acts that are the 'causes in fact' of injury, but utterly unforeseeable to the reasonable person.'" *Ojimba v. United States*, No. 21 CV 00351, 2026 WL 776261, at *16 (N.D. Ill. Mar. 16, 2026) quoting *Scott v. Wendy's Props*., LLC, 131 F.4th 815, 820 (7th Cir. 2025); *Luce*, 873 F.3d 999 at 1013.

Here, the United States can show "cause in fact;" namely that "but for" the falsified loan application, the defendants would not have received the loans, *i.e.* defendants' "conduct was a material element and a substantial factor in bringing about the" loss. *Luce,* 873 F.3d at 1012; Cpl., ¶¶ 37, 45. As the application even states, the loan would not have been approved if Kuzelka truthfully checked the "Yes," box. *Id.*

As for "legal cause," it is entirely foreseeable that a PPP loan applicant, such as Kuzelka and KSO, would receive a loan to which they were not entitled if they falsely checked the "No" box, especially when the application even states that a "Yes" answer will result in no loan, unlike

---

[1] *Luce* was remanded to allow the district court to consider the new standard of proximate causation, which includes the foreseeability analysis. *Luce*, 873 F.3d 999 at 1012, 1014.

11

in *Luce*, where a reasonable person may not foresee that a mortgage broker's falsified annual certification would result in third-party borrowers defaulting on mortgages. Cpl., ¶¶ 37, 45. And it is certainly not "utterly unforeseeable to the reasonable person" that falsely checking the "No" box would result in an approved loan resulting in a loss to the government. *Ojimba*, 2026 WL 776261, at *16 quoting *Scott*, 131 F.4th at 820.

Defendants' argument (Mem. at 6) that a different question on the application regarding *prior* criminal conduct that was modified by SBA (86 Fed. Reg. 43, 13154-55 (March 8, 2021), when read together with the question regarding *current* criminal charges, "create ambiguity as to whether all pending felony charges were disqualifying," is not a defense or even plausible. There is nothing confusing about the question that Kuzelka answered falsely, and it is unrelated to the question concerning *prior* criminal conduct. Cpl., ¶¶ 37, 45. Besides, as the interim final rule stated, while the definitions changed for *prior* criminal conduct affecting question number 6 on the first draw loan and number 5 on the second draw loan, "the remaining restrictions on eligibility related to an applicant or owner's criminal history [such as *pending* criminal charges] will help mitigate the risk of default, fraud, or misuse of PPP loan funds that are intended to benefit small business employees." 86 Fed. Reg. 43, 13154-55 (March 8, 2021). In other words, the rule change did not affect the question at issue here because SBA considered applicants like the defendants to be a "risk of default, fraud, or misuse of PPP loan funds." *Id*. Regardless, the United States need not prove causation at this stage, and the allegations meet the pleading requirements, as set forth above. *Molina Healthcare of Illinois, Inc*., 17 F.4th at 745. However, should the court find any pleading defect, it should grant the United States leave to replead. Rule 15 requires that leave to amend "shall be freely given," and the "sound discretion" of the trial court to grant such leave "must be exercised keeping in mind that the mandate to freely permit amendments "is to be

heeded." *Olech v. Vill. of Willowbrook*, 138 F. Supp. 2d 1036, 1040 (N.D. Ill. 2000) citing *Foman v. Davis*, 371 U.S. 178, 182 (1962).

## II.     The Damages and Penalties Do Not Violate the Excessive Fines Clause.

Treble damages and no more than four separate FCA penalties do not violate the excessive fines clause of the Eighth Amendment.  The Eighth Amendment is violated only "if the fine is 'grossly disproportional to the gravity of a defendant's offense.'"  *United States v. Dolphin Mortg. Corp.*, No. 06-CV-499, 2009 WL 153190, at *16 (N.D. Ill. Jan. 22, 2009) quoting *United States v. Bajakajian*, 524 U.S. 321, 336 (1998)).  In evaluating proportionality, courts "focus on four factors: (1) the essence of the offense and its relation to other criminal activity; (2) whether the defendant fits into the class of persons for whom the statute was principally designed; (3) the maximum sentence and fine that could have been imposed; and (4) the nature of the harm caused by the defendant's conduct.  *Stop Illinois Health Care Fraud, LLC v. Sayeed*, 100 F.4th 899, 907 (7th Cir.), *reh'g denied*, No. 22-3295, 2024 WL 2785312 (7th Cir. May 30, 2024), and cert. denied, 145 S. Ct. 381 (2024) citing *United States v. Malewicka*, 664 F.3d 1099, 1104 (7th Cir. 2011).

Here, the relationship between the offense and other crimes is significant and Kuzelka and KSO are within the class of people for whom the statute was principally designed.  When Kuzelka falsified the loan applications, criminal charges were pending against her for planning and implementing a scheme to rehire illegal aliens through a staffing agency after she had already been warned by HSI that her conduct was illegal.  Cpl., ¶¶ 26–49.  And it's not as if she was a passive participant in the criminal activity; rather, she personally represented to HSI that the employees that were identified in the audit were terminated when she knew that they were in fact rehired through a staffing agency.  *Id*., ¶ 28. Kuzelka knew her representations to HIS were false, as she was personally involved in the rehiring scheme, she oversaw the payments to the rehired illegal

13

alien employees, and she even provided at least one employee with a KSO credit card instead of putting the employee on the payroll to conceal that the employee was working for KSO. *Id*., ¶¶ 29–30. Kuzelka was obviously aware of the pending criminal charges against her when she falsified the loan applications since she negotiated a non-prosecution agreement shortly after she applied for the loans. *Id*., ¶ 33. The defendants took advantage of the SBA's need for speed in approving loans due to the emergency nature of the pandemic by falsifying an application so they could obtain a loan with minimal or no review. *Id*., ¶ 12–14; 86 Fed. Reg. 43, 13154-55 (March 8, 2021); Mem. at 3. These facts do not weigh in favor of a lower penalty, damages, or fine.

Also, the false answers to the questions regarding current criminal charges were significant to the loan program: "In light of the unique, emergency nature of the PPP and the higher fraud risk that exists due to the PPP's emphasis on speed in loan approvals and disbursements, the remaining restrictions on eligibility related to an applicant or owner's criminal history [pending criminal charges] will help mitigate the risk of default, fraud, or misuse of PPP loan funds that are intended to benefit small business employees." 86 Fed. Reg. 43, 13154-55 (March 8, 2021). Furthermore, treble damages and penalties for each falsified application "falls squarely within the boundaries set by Congress," and is in line "with the damages formula in 31 U.S.C. § 3729(a)." *Sayeed*, 100 F.4th at 907-08. The single damage claim is the amount of the loans, plus interest and processing fees, and Congress provided that treble damages are mandatory under the FCA. Cpl., ¶ 3; 31 U.S.C. § 3729(a); *United States v. Williams*, No. 02 C 4990, 2003 WL 21384640, at *5 (N.D. Ill. June 12, 2003) ("[J]udgments about the appropriate punishment for an offense belong in the first instance to the legislature . . . . Reviewing courts . . . should grant substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of

14

punishments for crimes . . . . Whatever views may be entertained regarding severity of punishment . . . these are peculiarly questions of legislative policy.") quoting *Bajakajian*, 524 U.S. at 336.

**III.     The Defendants Were Unjustly Enriched**.

As alleged in the complaint, the actions described above caused the defendants to be unjustly enriched by receiving PPP loans, and forgiveness of those loans, for which they were not entitled due to the false certifications and statements on the loan applications.  Defendants provide no argument that they were not unjustly enriched besides the arguments addressed above.

**Conclusion**

For the foregoing reasons, this court should deny defendants' motion to dismiss.

Respectfully submitted,

ANDREW S. BOUTROS
United States Attorney

By: s/ Kurt N. Lindland
KURT N. LINDLAND
Assistant United States Attorney
219 South Dearborn Street
Chicago, Illinois 60604
(312) 353-4163
kurt.lindland@usdoj.gov

15
