IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA, *ex rel.*,  )
Aidan Forsyth,  )
       )
     Plaintiff,  )
       )
     v.  )     No. 1:23-cv-04875
       )
KSO METALFAB, INC., and DORA KUZELKA,  )     Judge Manish S. Shah
       )
     Defendants.  )

## DEFENDANTS' REPLY BRIEF IN SUPPORT OF RULE 12(b)(6) MOTION TO DISMISS

Defendants, Dora Kuzelka ("Dora") and KSO Metalfab, Inc ("KSO"), state as follows in further support of their Fed. R. Civ. P. 12(b)(6) Motion to Dismiss:

The Government's claims here are unprecedented in their attempt to make a False Claims Act ("FCA") case based on a PPP loan in the absence of any allegations that: (a) KSO did not need the loan to stay afloat and not lay off employees; or (b) KSO misapplied even a penny of the funds received. The Government's Response does not discuss even a single case involving circumstances like this one.

This matters because the PPP program was as much a grant or support program as it was a loan program. *See e.g.*, In re Skefos, No. 19-29718-L, 2020 WL 2893413, at *11 (Bankr. W.D. Tenn. June 2, 2020), *aff'd sub nom*. Carranza v. Alpha Visions Learning Acad., Inc., No. 2:20-CV-02416-JTF-TMP, 2023 WL 11968535 (W.D. Tenn. Jan. 11, 2023) ("While a borrower's bankruptcy status clearly is relevant for a normal loan program, the PPP is the opposite of that. It is not a loan program at all. It is a grant or support program."); *In re Roman Cath. Church of Archdiocese of Santa Fe*, 615 B.R. 644, 654 (Bankr. D.N.M. 2020) (same, stating PPP "'loans"

are really grants. Repayment is not a significant part of the program.").[1] However characterized, the Government made PPP "loans" so businesses like KSO could pay their rent and employees and avoid lay-offs or closure. Here, the Government got what Congress created the PPP program to do, and the Complaint does not allege otherwise.

The Government's Response ultimately collapses eligibility into causation by treating the issuance of the PPP loans themselves as the Government's injury. But Seventh Circuit FCA precedent requires more than an allegation that the Government would not have approved participation in the program absent the challenged statements; it requires a plausible allegation that the statement proximately caused a cognizable pecuniary loss.

The Response only underscores the false premise that the Government was harmed, such that Dora and KSO should be severely punished, because Dora had been indicted for (but never convicted of) a crime, conviction for which undisputedly would _not_ have disqualified KSO from the PPP program. This is the central absurdity of the Complaint which no re-pleading could correct.

## I. DORA'S ALLEGED MISREPRESENTATIONS DID NOT CAUSE THE GOVERNMENT ANY COGNIZABLE LOSS

The Government argues that its reliance on Dora's alleged misrepresentations to approve and pay the KSO PPP loans establishes causation. Dkt. 41, p.11. Recent Seventh Circuit cases that address the issue, however, have held that the Government's payment of money based on a misrepresentation goes to materiality, not causation, the latter of which is established only by a showing of proximately caused pecuniary damages. Because the Government did not plead facts that would establish it suffered any loss or damages proximately caused by Defendants' alleged wrongdoing, it did not plausibly plead causation under F.R.C.P. 8, let alone the heightened fraud

---

[1] Although there is some authority finding that an applicant's criminal history is a relevant inquiry, the point is that PPP loans served a different purpose that other Government loan programs and the differences are important for the reasons stated herein.

pleading requirements of Rule 9(b), thus this case should be dismissed. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

Since the United States Supreme Court issued its decision in *Universal Health Services, Inc. v. United States ex rel. Escobar,* 579 U.S. 176 (2016), the Seventh Circuit has issued three key opinions addressing the causation requirement of FCA cases. In *United States v. Luce,* 873 F.3d 999, 1014 (7th Cir. 2017), the court overruled its prior cases applying a "but for" causation standard in FCA cases and held that a claim under the FCA must meet the stricter common law fraud requirement that a misrepresentation "was the proximate cause of the government's harm." *Id.* at 1012, 1014.

The Government's attempt to explain away and distinguish the *Luce* opinion is nonsensical. First, the Government argues that *Luce* does not apply because it "redefined the causation element to be *proven* at trial or summary judgment, not *alleged* in a complaint subject to a motion to dismiss." Dkt. 41, p. 10. (Emphasis added). This assertion is self-defeating. Under *Iqbal,* because the Government must prove causation as an element of its FCA claim, it must allege facts that if proven would plausibly establish this element. The Government has not done so. Second, the Government argues that *Luce* "simply added the legal cause requirement to the plaintiff's burden of proof…" *Id.* at 11. *Luce,* however, added a further burden on the government to establish that the alleged acts of a defendant proximately caused a loss. Here, the Government has not identified *any* loss it allegedly suffered, instead arguing that Dora's alleged misrepresentations caused the Government to make the KSO PPP loans. That is the "but for" causation standard abandoned in *Luce*, *i.e.*, that "but for" the statements, no loan would have been made. But this is different from proximate cause, particularly where the Government's expectation was that the "loan" proceeds would be properly applied and the loan forgiven. This explains why other FCA cases involving

3

PPP loans allege misapplication of loan proceeds, because it is the misapplication of the proceeds that proximately cause a loss.

If there could be any legitimate doubt about the proper interpretation of *Luce,* it is removed by the second post-*Escobar* Seventh Circuit case, *United States v. Carrington Mortg. Servs.,* 70 F.4th 968 (7th Cir. 2023).[2] Consistent with *Luce,* the *Carrington* court held that for there to be liability under the FCA a plaintiff must establish all elements of common law fraud, 1) the defendant made a false statement (falsity); 2) the defendant knew the statement was false (knowledge); 3) the false statement was material to the government's payment decision (materiality); and 4) the false statement caused the government's loss (causation). *Id.* at 973.

In *Carrington*, the defendant made false representations that induced the U.S. Department of Housing and Urban Development ("HUD") to provide mortgage insurance and indemnity. *Id.* at 971. In addressing the materiality and causation requirements, the court held as follows:

> If HUD would have withheld federal insurance or issued an indemnification agreement had it known of the noncompliance, then the false certification of compliance is material to HUD's payment decision. And if the loan defaults and HUD covers the cost of the default, then the false certification of compliance causes the government's loss when the loan's noncompliance is the foreseeable cause of the default.
> ***
> To show proximate causation, [the relator] had to put forward evidence indicating that the false certifications in the reviewed loans were the foreseeable cause of the later defaults.

*Id.* at 973, 979. Thus, the Government's decision to approve the PPP loans relates only to materiality, it did not cause a loss to the Government.

The third post-*Escobar* Seventh Circuit causation case is *United States v. Molina Healthcare of Illinois, Inc.,* 17 F.4th 732 (7th Cir. 2021), cited by the Government in its Response. Dkt. 41, pp. 9-10. To support its argument that Dora's alleged misrepresentations satisfied the causation element, the Government asserts that the *Molina Healthcare* court held that "allegations

---

[2] The Government does not address *Carrington* in its Response even though it was cited in Defendants' Memorandum. [Dkt. 40, pp. 6 and 7]

that an applicant submitted falsified forms to receive government funds 'is enough to satisfy the pleading burden on causation.'" *Id.* The text of this sentence that precedes the Government's quote from *Molina Healthcare*, however, blatantly misstates the court's holding.

In *Molina Healthcare,* the defendant contracted with the State of Illinois to provide skilled nursing facility services. Because the defendant did not have the personnel to provide the services, it subcontracted with a third party that employed the required personnel. The State paid the defendant, which in turn was required to pay the third party. After the defendant's contract with the third party was terminated for non-payment, the defendant continued to bill the State for services the defendant did not and could not provide. As the court put it, the defendant received "payments for nothing." *Id.* at 738.

Consistent with *Luce* and *Carrington*, the court explained it was not enough that the defendant made a false statement to receive money from the government; the government also had to establish causation, meaning the defendant caused an injury in the form of "pecuniary losses." *Id.* at 739-40. The *Molina Healthcare* court explained the Government's burden and why it was met in that case: "Last, we say a word about causation. This too is an element of an FCA claim: *the plaintiff must establish that the defendant's fraud 'was a material element and a substantial factor in bringing about an injury*.'" The court held that causation was "evident" because the defendant "submitt[ed] enrollment forms requesting payment for services [the defendant] could not provide to Illinois Medicaid…" *Id.* at 745. (Emphasis added).

The *Molina Healthcare* court did not implicitly overrule *Luce* and *Carrington*. The court simply held the causation element was satisfied in that case because the defendant submitted false forms in a scheme to fraudulently receive payment for services it did not provide.

Here, the Government did not plead that Dora or KSO used the PPP loan proceeds for any purpose other than what was intended by the CARES Act. It did not plead that KSO defaulted on

its PPP loans or that any other businesses were denied PPP loans due to Dora's alleged misrepresentations. The Government thus failed to allege any facts inconsistent with its receipt of what it "paid for," that is, that the PPP funds were applied properly by KSO to pay employees and other approved expenses to avoid lay-offs during the pandemic. The loan was thus forgiven because it worked as it was supposed to. This is not an injury of a pecuniary nature, as required to allege proximate causation.

The United States Supreme Court has "emphasize[d] … that the False Claims Act is not a means of imposing treble damages and other penalties for insignificant regulatory or contractual violations." *Universal Health Services, Inc. v. U.S.,* 579 U.S. 176, 196 (2016). That is precisely what the Government is seeking to do in this case. It relies on Dora's alleged misrepresentations about an indictment for a crime that, had she been convicted, would not have disqualified KSO from participation in the PPP program. It does not allege that the program did not work as intended in this instance. In that critical respect, the Government fails to allege that Dora's statement was the proximate cause of damages to the Government. For these reasons, the Government has not plausibly alleged causation and thus its claims should be dismissed.

## II.     THE DAMAGES AND PENALTIES SOUGHT ARE UNCONSTITUTIONALLY EXCESSIVE

While the Government argues that judgments about the appropriate penalties for an offense belong *in the first instance* to the legislature and courts should give substantial deference to the legislature's determinations, Dkt. 41, at 14, this does not mean that excessive fines under the FCA are not subject to judicial review. Indeed, "[t]he touchstone of the constitutional inquiry under the Excessive Fines Clause is the principle of proportionality: The amount of the [fine] must bear some relationship to the gravity of the offense that it is designed to punish." *United States v. Bajakajian,* 524 U.S.321, 334 (1998). This determination, by its nature, is to be made by a court based on the facts of each case.

Here, the alleged facts establish that the treble damages sought by the Government would violate the excessive fines provision of the Eighth Amendment. To begin with, the Government does not dispute that the damages it seeks are at least in part a penalty, thus there is no question they must pass muster under the Eighth Amendment. *Grashoff v. Adams,* 65 F.4th 910, 916 (7th Cir. 2023) ("[C]ivil sanctions can constitute punishment, and therefore are subject to the limitations of the Excessive Fines Clause, if they serve, at least in part, retributive or deterrent purposes"); citing *Towers v. City of Chicago,* 173 F.3d 619, 625 (7th Cir. 1999).

Further, the Government does not dispute that if Dora had misapplied the PPP loan funds rather than using them for the purposes intended under the CARES Act, it would be seeking identical damages in this case. This alone is compelling proof that the damages and fines sought in this case are excessive. Allowing treble damages under these circumstances would run counter to the *Universal Health Services* guidance against using the FCA to impose treble damages for insignificant regulatory or contractual violations. 579 U.S. at 196. Not surprisingly, the Government has not cited any case with a similar fact pattern where a defendant was found liable under the FCA for using Government funds for their intended purposes.

To support the Government's argument that Dora's answers on the loan application forms "were significant," it notes that in the SBA's March 8, 2021 interim final rule it determined that the remaining criminal history restrictions on PPP loan eligibility "will help mitigate the risk of default, fraud, or misuse of PPP loan funds that are intended to benefit small business employees." Dkt. 41, p. 14. This is just an argument that the statements were relevant to the decision to let KSO participate in the program.

As the Government recognizes, the controlling issue in an excessive fines case is whether the fine is "grossly disproportionate to the gravity of a defendant's offense." *Id.* p. 13. This standard is based on the touchstone *Bajakajian* principle that a penalty must bear some relationship

to the gravity of the offense that it is designed to punish. 524 U.S. at 334. Applying the four factors courts focus on when addressing whether a fine or penalty would violate the excessive fines clause establishes that the damages and fines sought by the Government in this case are unconstitutionally excessive.

One of the factors is the nature of the harm caused by the defendant's conduct. Critically, this factor assumes there was harm. As noted above, in the context of FCA cases the harm must proximately cause a pecuniary loss or injury to the Government. The absence of harm conclusively establishes that any fine would be inappropriate, while the treble damages and other monetary relief sought by the Government, where it benefitted from the loan proceeds being used to pay the KSO employees, is grossly disproportionate to Dora's alleged wrongful conduct.

For these same reasons, Dora and KSO do not fit into the class of persons or entities for whom the FCA was principally designed. Only those whose wrongful conduct proximately causes pecuniary loss or damage to the Government are the intended targets of the FCA.

Further, the Government is seeking the maximum fine allowed under the FCA, which it argues is mandatory. This one size fits all punishment as applied to this case would be excessive. The Government is seeking three times the amount of the loans made to KSO, not treble damages based on any pecuniary harm it suffered. A fine of over $2.5 million in a case where the Government has not suffered any damages would be *per se* disproportionate to the gravity of the alleged offense and therefore excessive and unconstitutional.

Finally, Dora's conduct is put into proper perspective by the rapidly changing landscape of the PPP loan program as detailed in Defendants' Memorandum. On February 22, 2021, the Biden administration advised the American public that "[c]*urrently*, a business is ineligible for PPP if it is at least 20 percent owned by an individual who has either: (a) an *arrest* or conviction for a felony *related to financial assistance fraud* within the previous five years; or (2) any other felony within

8

the previous year." (Emphasis added). The Administration accurately suggested the "other felony within the previous year" restriction would be rescinded. The SBA did so on March 8, 2021, days before Dora submitted the first loan application for KSO.

The SBA's March 8, 2021 loan application form only added to the confusion. The form included two questions related to an applicant's criminal history. Here, the Government avoids addressing the confusion in the form by only addressing the first question and by repeatedly focusing on the outdated "pending criminal charges" language, rather than the revised restriction that focused on *felony* charges for fraud related crimes. The loan application form included the two criminal history questions and advised that the application could be rejected depending on how the two questions were answered. The explanation for the first question stated that if the applicant had pending felony charges, the application would be denied. As to the second question, however, it was only a *conviction* for limited financial fraud charges that would cause the application to be denied.

Dora was under indictment at the time of the loan applications but not for any fraud-related crime for which a conviction would have disqualified KSO. The application form advised that, even if Dora had been convicted of the non-financial fraud felonies with which she was charged, this would not cause KSO's loan application to be denied. Although the Government now tries to rationalize why a different, higher standard should apply to pending felony charges as opposed to convictions, no such explanation was provided to Dora in the loan application. While lawyers can rationalize why a pending felony charge would disqualify a loan applicant while the applicant would qualify for the loan if its primary owner had been convicted of the same felony, the loan application did not disclose the alleged logic for the distinction. Instead, the loan application appeared to indicate that answering "yes" to the first question would disqualify the applicant from receiving a loan that was allowed by the wording of the second question.

9

While Dora's state of mind is not at issue in the pending Motion, the Government did not plead any facts that indicate Dora intentionally applied for a loan to defraud the Government by using the proceeds for any unintended purpose. In many FCA cases, illustrated by *Molina Healthcare,* the defendant's conduct reflected a high degree of reprehensibility because it plotted to defraud the Government by obtaining funds with no intent of using the funds for a proper purpose. This is not such a case. The gravity of Dora's alleged offense is low, the key consideration in determining whether the treble damages sought by the Government are excessive. Under all these circumstances, the penalties sought by the Government would violate the excessive fines provision of the Eighth Amendment.

### III.     THE UNJUST ENRICHMENT CLAIM SHOULD BE DISMISSED

The Government's unjust enrichment claim is based on the same facts as its FCA claims. Dkt. 26, p. 15. For this reason, the unjust enrichment claim will stand or fall along with the FCA claims. *Cleary v. Philip Morris,* 656 F.3d 511, 517 (7th Cir. 2011). Defendants incorporate their arguments above as the basis for dismissal of the unjust enrichment claim.

### IV.     THE GOVERNMENT'S REQUEST TO FILE AN AMENDED COMPLAINT SHOULD BE DENIED

Although the Government asks for leave to amend if it has failed to state claims in its Complaint, it does not offer any explanation for why it should be allowed to do so. The Government does not allege it has evidence that Dora or KSO misused the PPP loan proceeds or that there was any downstream damage caused by the loans to KSO. It does not allege that it requires discovery to fully respond to the issues raised in Defendants' Motion to Dismiss. Under these circumstances, amendment would be futile.

Further, the Government passed on the opportunity to amend as of right by not seeking to do so within 21 days after Defendants filed their Motion to Dismiss. F.R.C.P. 15(a)(1)(B). The Government has not filed a motion seeking leave to amend, and even the insufficient request to

10

amend included in its Response does not provide any reason why it should be allowed to do so. For these reasons, Defendants request that the Court deny the Government's request to file an Amended Complaint, or in the alternative that the Court require the Government to provide a good faith basis for why an amended complaint would cure the deficiencies in its original Complaint.

Date: May 18, 2026                               Respectfully submitted,

                                                 KSO Metalfab, Inc. and Dora Kuzelka

                                                 By: */s/Gary Hollander*
                                                 Gary P. Hollander (ARDC #6181915)
                                                 Khoa Trinh (ARDC #6351044)
                                                 ARONBERG GOLDGEHN
                                                 225 W. Washington St. Suite 2800
                                                 Chicago, Illinois 60606
                                                 (312) 923-7336
                                                 ghollander@agdglaw.com
                                                 ktrinh@agdglaw.com

                                                 *Counsel for Defendants*

## CERTIFICATE OF SERVICE

I, Khoa D. Trinh, hereby certify that on May 18, 2026 I caused to be electronically filed the foregoing ***REPLY BREIF IN SUPPORT OF RULE 12(b)(6) MOTION TO DISMISS,*** true and correct copies of which will be served via the Court's EF/ECM system on all parties of record.

/s/ Khoa D. Trinh

12