**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* AIDAN FORSYTH,<br><br>Plaintiff,<br><br>v.<br><br>KSO METALFAB, INC., and DORA KUZELKA,<br><br>Defendants. | No. 23 CV 4875<br><br>Judge Manish S. Shah |

**MEMORANDUM OPINION AND ORDER**

Early in the COVID-19 pandemic, Congress created the Paycheck Protection Program to help small businesses keep paying their employees. The program offered forgivable loans guaranteed by the Small Business Administration, but a business could not take part if someone owning 20% or more of it faced pending felony charges. Dora Kuzelka owned a majority of KSO MetalFab, Inc., and in 2021 she was facing federal charges for harboring unauthorized workers at the company. She nonetheless signed two PPP loan applications for KSO that answered “No” when asked whether any 20% owner was subject to pending felony charges. KSO received two loans totaling $833,454, and the SBA later forgave both. A relator sued KSO and Kuzelka under the False Claims Act, and the United States intervened, adding a claim for unjust enrichment. Defendants now move to dismiss for failure to state a claim upon which relief can be granted. For the reasons discussed below, the motion to dismiss is denied.

## I. Legal Standards

To survive a motion to dismiss, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). When analyzing the sufficiency of a complaint, I construe it in the light most favorable to the plaintiff, accepting all well-pleaded facts as true and drawing all inferences in its favor. *Atlanta Gas Light Co. v. Navigators Ins. Co.*, 164 F.4th 1038, 1046 (7th Cir. 2026). Legal conclusions, however, are "not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

Rule 8(a) "does not demand detailed factual allegations, but it does require more than mere 'labels and conclusions,' or a 'formulaic recitation of the elements of a cause of action.'" *Wertymer v. Walmart, Inc.*, 142 F.4th 491, 494–95 (7th Cir. 2025) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "The complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Id.* at 495 (citing *Iqbal*, 556 U.S. at 678). Put another way, the complaint must "present a story that holds together." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010).

Because the government alleges fraud, it must also satisfy the heightened pleading standard of Federal Rule of Civil Procedure 9(b). That means it "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); *United States ex rel. Berkowitz v. Automation Aids, Inc.*, 896 F.3d 834, 839 (7th Cir. 2018). In most cases, a complaint does that by describing "the who, what, when, where, and how: the first paragraph of any newspaper story." *United States ex rel.*

*Hanna v. City of Chicago*, 834 F.3d 775, 779 (7th Cir. 2016) (quoting *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990)).

## II. Facts

KSO MetalFab, Inc. was a metal fabricating company in Streamwood, Illinois. [26] ¶¶ 8, 25.[1] Dora Kuzelka was its president and owned 51% of its shares. [26] ¶¶ 9, 25, 39. In 2017, a federal immigration inspection revealed that about 36 of KSO's 67 employees were not authorized to work in the United States. [26] ¶ 26. Members of the Kuzelka family, Dora Kuzelka included, then rehired some of those workers through a staffing company while telling investigators that all 36 had been let go. [26] ¶¶ 27–30. In 2019, Kuzelka and three of her children were charged by criminal complaint with conspiring to harbor aliens for commercial advantage, harboring aliens, and engaging in a pattern or practice of hiring unauthorized aliens. [26] ¶ 31; *see also United States v. Kuzelka, et al.*, No. 19 CR 780, Dkt. Nos. 15 & 58 (N.D. Ill.).

The next spring, Congress enacted the Coronavirus Aid, Relief, and Economic Security Act, which authorized the Small Business Administration to guarantee 100% of loans made by participating lenders under the Paycheck Protection Program and provided for the forgiveness of those loans. [26] ¶ 10. A business applied through a lender, using an SBA form on which the business certified that it was eligible, and lenders were generally allowed to rely on those certifications. [26] ¶¶ 11–12. When a lender approved an application, it transmitted the information to the SBA, which

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings. The facts are taken from the complaint in intervention, [26].

assigned a loan number and guaranteed the loan. [26] ¶ 13. A borrower could later apply for forgiveness, again through the lender. [26] ¶ 14. When forgiveness was approved, the SBA paid the lender the principal amount of the loan plus interest. [26] ¶ 14. The SBA also paid lenders a fee for processing each loan. *See* [26] ¶¶ 3, 40, 47.

The SBA's rules excluded some businesses based on the criminal histories of their owners, and those rules changed over time. [26] ¶¶ 15–17. In March 2021, the SBA eliminated a rule that had disqualified a business if an owner of 20% of more of the equity of the applicant had been convicted of a felony not involving fraud within the previous year. Business Loan Program Temporary Changes; Paycheck Protection Program—Revisions to Loan Amount Calculation and Eligibility, 86 Fed. Reg. 13149, 13154 (Mar. 8, 2021).[2] But it kept others.

After the change, a business was ineligible if "[a]n owner of 20 percent or more of the equity of the applicant is presently incarcerated or, for any felony, presently subject to an indictment, criminal information, arraignment, or other means by which formal criminal charges are brought in any jurisdiction; or has been convicted of … a felony involving fraud, bribery, embezzlement, or a false statement in a loan application or an application for federal financial assistance within the last five years." *Id.* at 13155. A business that was not eligible for a first PPP loan was not eligible for a "second draw" loan either. [26] ¶ 18.

In March 2021, while the charges against her were pending, Kuzelka signed and submitted a PPP application for KSO to Itasca Bank and Trust Company, seeking

[2] I take judicial notice of the contents of the Federal Register. 44 U.S.C. § 1507.

$416,727. [26] ¶ 35. Question 5 on the form asked: "Is the Applicant (if an individual) or any individual owning 20% or more of the equity of the Applicant presently incarcerated or, for any felony, presently subject to an indictment, criminal information, arraignment, or other means by which formal criminal charges are brought in any jurisdiction?" [26] ¶ 37. Above the question, the form stated: "If questions (1), (2), (5), or (6) are answered 'Yes,' the loan will not be approved." *Id.* The "No" box was checked, and Kuzelka initialed the answer. *Id.* She also certified that KSO was "eligible to receive a loan under the rules in effect at the time this application is submitted." [26] ¶ 38. The bank transmitted the application to the SBA, which guaranteed the loan; the bank disbursed $416,727 to KSO; and the SBA paid the bank a $12,501 processing fee. [26] ¶ 40.

Three weeks later, KSO applied for a second-draw loan in the same amount. [26] ¶ 43. That form asked the same question about criminal charges (this time as question 4), under the same kind of warning, and again the "No" box was checked and initialed. [26] ¶ 45. Kuzelka again certified that KSO was eligible. [26] ¶ 44. The SBA guaranteed the loan, the bank disbursed another $416,727, and the SBA paid the bank another $12,501 fee. [26] ¶ 47.

In May 2022, several of Kuzelka's relatives pled guilty, and Kuzelka entered into an agreement under which the government deferred her prosecution for 18 months. [26] ¶¶ 32–33. The next month, KSO applied for forgiveness of both loans, and Kuzelka certified that the information in the applications and supporting documents was "true and correct in all material respects." [26] ¶¶ 41, 48. The SBA

approved forgiveness a week later and paid the bank $422,121 and $421,820—the principal of each loan plus interest. [26] ¶¶ 42, 49. The government alleges that the SBA lost $868,943 in all. [26] ¶ 3.

Relator Aidan Forsyth filed this qui tam action in 2023. [7]. The United States elected to intervene, [24], and filed a complaint in intervention, [26]. The government asserts two theories of liability under the False Claims Act—that defendants knowingly presented, or caused to be presented, false claims for payment, 31 U.S.C. § 3729(a)(1)(A), and that they knowingly made or used false records or statements material to false claims, § 3729(a)(1)(B)—along with a claim for unjust enrichment. [26] ¶¶ 50–59. It seeks treble damages, a civil penalty for each false claim, and the amount by which defendants were unjustly enriched. [26] at 16.

## III. Analysis

The False Claims Act imposes liability on any person who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval," or who "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim." 31 U.S.C. § 3729(a)(1)(A)–(B). A person who violates the Act is liable for a civil penalty for each violation, "plus 3 times the amount of damages which the Government sustains because of the act of that person." 31 U.S.C. § 3729(a)(1). To state a claim, the government must allege that the defendant made a false statement, that the defendant knew the statement was false, that the statement was material to the government's payment decision, and that the statement caused the government's loss. *United States ex rel. Calderon v. Carrington*

*Mortg. Servs., LLC*, 70 F.4th 968, 973 (7th Cir. 2023) (citing *United States ex rel. Prose v. Molina Healthcare of Ill., Inc.*, 17 F.4th 732, 739–40 (7th Cir. 2021)).

For the purposes of this motion, defendants do not dispute that the complaint adequately alleges the first three elements.[3] They argue instead that the complaint does not plausibly allege that the false certifications caused the government any loss, that the damages and penalties the government seeks would violate the Eighth Amendment's Excessive Fines Clause, and that the unjust enrichment claim falls with the False Claims Act theories.

### A. Causation

To recover under the False Claims Act, a plaintiff must establish both actual and proximate cause. *Id.* at 978–79. Proximate cause "encompasses both cause in fact and legal cause." *United States v. Luce*, 873 F.3d 999, 1012 (7th Cir. 2017) (quoting *Blood v. VH-1 Music First*, 668 F.3d 543, 546 (7th Cir. 2012)). Cause in fact means that the defendant's "conduct was a material element and a substantial factor in bringing about the injury." *Id.* at 1014 (quoting *Blood*, 668 F.3d at 546). Legal cause "is essentially a question of foreseeability"—whether "the injury is of a type that a reasonable person would see as a likely result of his or her conduct." *Id.* (quoting *Blood*, 668 F.3d at 546).

[3] Defendants' reply acknowledges that Kuzelka's "state of mind is not at issue in the pending Motion." [42] at 10. The reply also refers in passing to Rule 9(b), [42] at 2–3, but defendants do not identify any respect in which the complaint's account of the alleged fraud lacks particularity. The complaint identifies who made the certifications, what they said, when and to whom they were made, and how they led to payment. [26] ¶¶ 35–49.

The complaint adequately alleges causation. Each application warned that a "Yes" answer to the criminal-charges question meant the loan "will not be approved." [26] ¶¶ 37, 45. Had the question been answered truthfully, then, KSO would not have received either loan, the SBA would not have guaranteed the loans or paid the lender's processing fees, and there would have been nothing to forgive. *See* [26] ¶¶ 40, 42, 47, 49. The false answers were a substantial factor in bringing about those payments.

The payments were also a foreseeable result of the false answers. An applicant who falsely certifies that she is eligible for government money can expect, as a likely result, that the government will pay money it would not otherwise have paid. That is the risk a false eligibility certification creates, and it is the loss the government alleges here. The Court of Appeals said as much in *Molina*, where a Medicaid managed-care company continued to accept payment at a rate that covered services it could no longer provide: "By submitting enrollment forms requesting payment for services Molina could not provide to Illinois Medicaid, Molina caused the government to pay significant sums that it would not have paid with full knowledge. That is enough to satisfy the pleading burden on causation." 17 F.4th at 745. The same is true of KSO's applications.

Defendants' principal objection is not to the causal chain but to the premise that the government lost anything. The PPP, they say, "was as much a grant or support program as it was a loan program," and here "the Government got what Congress created the PPP program to do." [42] at 1–2. "The loan was thus forgiven

because it worked as it was supposed to." [42] at 6. Because the government does not allege that KSO misused the proceeds, defaulted, or took money that would have gone to someone else, defendants say it has not alleged "an injury of a pecuniary nature." [42] at 5–6.

That argument misidentifies what the government was paying for. The PPP did not offer forgivable loans to any business that would spend the money on payroll; it offered them to eligible businesses, and the SBA's rules excluded businesses whose owners faced pending felony charges. 86 Fed. Reg. at 13154–55. "When the conditions are not satisfied, nothing is due." *United States v. Rogan*, 517 F.3d 449 (7th Cir. 2008). KSO's payroll was not a service to the United States either. Calling the PPP a grant program does not help defendants, since a grant conditioned on eligibility is a subsidy with conditions. A business that was never entitled to the money does not become entitled to it by spending it as promised.

The complaint also alleges a loss that has nothing to do with how KSO spent the money. The SBA paid the lender $25,002 in processing fees because the loans were made. [26] ¶¶ 40, 47. Defendants do not address those payments.

Defendants argue that Kuzelka was charged with crimes that, had she been convicted of them, would not have disqualified KSO under the March 2021 rules, and that nothing on the forms explained why a pending charge should count against an applicant when a conviction for the same offense would not. [40] at 5–6; [42] at 2, 8–9. Whether that line was a sensible one to draw was for the SBA to decide, and the agency explained why it drew it. *See* 86 Fed. Reg. at 13154. The question here is

whether the complaint plausibly alleges that false answers to the question the SBA did ask caused the government to pay. It does. To the extent defendants mean that the forms were confusing enough that Kuzelka did not understand the question, that is an argument about falsity or knowledge, which defendants have not raised on this motion. *See* [42] at 10.

Lastly, defendants contend that the government "collapses eligibility into causation," because the SBA's reliance on the certifications when it approved the loans goes to materiality, not causation. [42] at 2–4. The two elements ask different questions. Materiality asks whether the false statement would have affected the government's decision to pay; causation asks whether the false statement brought about the government's loss. *See Carrington*, 70 F.4th at 973. In the mortgage-insurance cases, the answers can diverge, because HUD's decision to insure a loan is separate from its later payment on a default. *Id.* But where, as here, the payment induced by the false statement is itself the loss, the same facts establish both elements. That is not a reason to find either one missing.

The complaint plausibly alleges that defendants' false certifications caused the government's loss. That is all that is required at this stage.

### B. Excessive Fines

Defendants also argue that the statutorily mandated treble damages the government seeks would violate the Eighth Amendment's prohibition on excessive fines. It is unsettled in this circuit whether the Eighth Amendment applies to civil penalties under the False Claims Act. *Stop Illinois Health Care Fraud, LLC v. Sayeed*, 100 F.4th 899, 906 (7th Cir. 2024). But the Court of Appeals has "voiced

skepticism, observing that punitive damages—to which the FCA's trebling provision is often compared—are not 'fines' under the Eighth Amendment and that FCA liability does not constitute criminal punishment for purposes of the Double Jeopardy Clause." *Id.* at 906–07 (citing *Rogan*, 517 F.3d at 453–54). *But see Yates v. Pinellas Hematology & Oncology, P.A.*, 21 F.4th 1288, 1307 (11th Cir. 2021) (holding "that the damages and statutory penalties awarded in a non-intervened FCA qui tam action are subject to the Eighth Amendment's prohibition on excessive fines"); *Grant ex rel. United States v. Zorn*, 107 F.4th 782, 797–98 (8th Cir. 2024) (same).

By defendants' count, the treble damages and penalties the government seeks exceed $2.5 million. [40] at 2; [42] at 8. They contend that an award of that size would be "grossly disproportional to the gravity of a defendant's offense," *United States v. Bajakajian*, 524 U.S. 321, 334 (1998), because KSO used the funds as intended, the government suffered no real harm, Kuzelka was charged with but never convicted of a crime that would not have disqualified KSO in any event, and the PPP's eligibility rules were in flux. [40] at 8–9; [42] at 6–10. They ask that "the request for treble damages and statutory penalties" be dismissed. [40] at 9.

I do not need to decide whether the Clause applies, because even if it does, the argument is premature. To begin with, it targets a remedy rather than a claim. The government may well be right that treble damages and a handful of statutory penalties would not be grossly disproportional to the alleged scheme, given its connection to the charges then pending against Kuzelka and the deference owed to the penalty structure Congress chose. *See* [41] at 13–15. But that assessment depends

on facts that have not been established and on an award that has not been calculated. The demand for relief "is not itself a part of the plaintiff's claim," and even if the government is seeking relief to which it is not entitled, "this would not justify dismissal of the suit." *Bontkowski v. Smith*, 305 F.3d 757, 762 (7th Cir. 2002). If the Excessive Fines Clause applies, it limits the award that may be imposed once liability is established; it is not a reason to dismiss a claim that has been adequately pleaded.

The proportionality inquiry also cannot be done in the abstract. It turns on "(1) the essence of the offense and its relation to other criminal activity; (2) whether the defendant fit into the class of persons for whom the statute was principally designed; (3) the maximum sentence and fine that could have been imposed; and (4) the nature of the harm caused by the defendant's conduct." *Sayeed*, 100 F.4th at 907 (citing *United States v. Malewicka*, 664 F.3d 1099, 1104 (7th Cir. 2011)); *see also Grashoff v. Adams*, 65 F.4th 910, 916–17 (7th Cir. 2023). Each factor depends on facts not yet established: what Kuzelka knew and intended when she signed the applications, what the government's damages turn out to be, how many violations are proven, and where within the statutory range any penalty falls.

As the Court of Appeals put it in *Rogan*, "it is impossible to know whether the penalty is constitutionally 'excessive' without knowing what conduct the fine penalizes." 517 F.3d at 454; *see also Sierra Club v. Khanjee Holding (US) Inc.*, 655 F.3d 699, 705 (7th Cir. 2011) (noting "authority for the proposition that an Excessive Fines challenge is not ripe 'until the imposition, or immediately impending imposition, of a challenged punishment or fine'" (quoting *Cheffer v. Reno*, 55 F.3d

1517, 1523 (11th Cir. 1995))). Defendants' account of the gravity of the offense—that it "is low," [42] at 10—rests on their own characterization of what happened, which I cannot adopt over the complaint's allegations at this stage.

### C. Unjust Enrichment

Defendants' only argument against the unjust-enrichment claim is that it rests on the same facts as the False Claims Act theories and so "will stand or fall along with the FCA claims." [40] at 10 (citing *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 517 (7th Cir. 2011)); [42] at 10. The False Claims Act theories stand, so the argument fails on its own terms. I do not decide whether the rule *Cleary* applied as a matter of Illinois law, *see* 656 F.3d at 516–17, would govern a claim by the United States to recover federal funds. *Cf. United States v. Kimbell Foods, Inc.*, 440 U.S. 715, 726 (1979) ("This Court has consistently held that federal law governs questions involving the rights of the United States arising under nationwide federal programs."); *United States v. Park*, 389 F.Supp.3d 561, 579–82 (N.D. Ill. 2019) (applying federal common law to an unjust enrichment claim by the United States). The unjust-enrichment claim survives.

## IV. Conclusion

Defendants' motion to dismiss, [35], [39], is denied. The stay on discovery is lifted. Defendants must answer the complaint by October 26, 2026, and the parties shall file a joint status report by November 2, 2026, proposing a case schedule.

ENTER:

Manish S. Shah
United States District Judge

Date: October 5, 2026